A, B, C, D, E, F, G, I, J, K, L, M, N, O, P, Q, R, S, T, U, V, W, X, Y, Z, K, L, M, N, O, P, Q, R, X, Y, Z, Q, R, S, T, U, V, X, Y, Z, K, L, M, N, O, P, Q, R, S, T, U, V, W, X, Y, Z, G, O, P, Q, R, S, T, U, G, I, S, K, L, M, N, O, P, Q, R, S, T, U, V, X, K, L, M, J D was justifiable. Nevertheless, the amount of the enhancement was excessive. I don't see a separate argument on that. Your Honor, we did say that no enhancement, especially treble damages, was appropriate. That's in our blue brief. I think that implicitly means that trebles damages go too far. But any enhancement, in this case, is inappropriate under the circumstances under the egregiousness test of HALO. In a nutshell, the district court refused to consider the new HALO test, the egregiousness, and instead it put all of its reasoning into the Reed v. Portek factors, which are optional. But the key thing is the district court refused to consider. And that is that under the particular circumstances of the case, the district court has to consider whether the infringer, at the time of infringement, had any reason to doubt the validity of the patent. The court didn't go through that exercise. And that was the emphasis of HALO. And that was the reason that HALO overruled this court's Seagate test. And do I understand that the state of the evidentiary record, the actual admitted evidence, is a state in which the Siegel letters are not part of it? That is, you never offered them into evidence, either at the trial or on remand from this court, which would then have triggered a variety of processes, at least including the processes that the trial judge at trial said was going to be triggered, deposition of the MGA, internal counsel or something, to examine that. Is it one Siegel letter or two Siegel letters? Is it one Siegel letter or two Siegel letters? There's really just one. So what we have on this record is no admitted and tested evidence of what, at the time of the issuance of the patent, was MGA's state of mind. There is some evidence about what the pre-issuance state of mind is, which doesn't exactly help you. The copying of the product with a patent-pending mark on it, which ended up supporting affirmed 154D royalties, because the claims, because you knew about those claims, and the claims were only insubstantially different from the claims as issued. You made a lot of points. Let me try to address them, and I hope I can remember them all. One is that the claims of the published application were invalid on their face. They were invalid because of the SWIFT reference that was described in the written description portion of the patent application, which the examiner subsequently, without knowledge of MGA, rejected the claims in view of SWIFT, and they had to be amended to permit allowance. MGA, this court subsequently held that despite that amendment, they were substantially the same, but MGA had no way of knowing whether the patent would issue, or when it did issue, what the claims would be. It wasn't aware of that until the day that SWIFT was filed. That's where the absence of evidence of what MGA thought on or immediately upon issuance of the patent seems like a rather significant gap. Yes, I'm glad you reminded me of that part of your question. MGA, that analysis, the Segal analysis, is part of the record. The trial judge knew about it. I want to keep separate. Part of the record, because it was once proffered, but it's not part of admitted evidence subject to the usual process of testing the evidence. That's correct. It was not submitted to the jury. Or to the judge on remand from this court's 2016 ruling. The reason it wasn't submitted to the jury, because at the time, HALO had not yet overruled this court's Segate test. What HALO said is, you have to consider all the circumstances, the particular circumstances of the case, which includes that Segal analysis that the district court knew about. We tried to get that in. We asked for a new trial when this court remanded Sua Sponte to the district court after HALO reversed the willfulness ruling. We filed a petition for rehearing. We said, we should have a new trial. You said we couldn't submit any more evidence. So at that point, we didn't think we could submit, and you denied the petition for rehearing. We didn't think we could submit additional evidence at the trial court, but we very heavily relied on the Segal analysis, because that's part of the particular circumstances of the case. HALO said you have to consider the particular circumstances. In the Reed v. Portek case, this court affirmed the denial into evidence of certain exculpatory evidence, because it said the district court was right in excluding that evidence. But when it came to punishment in Reed v. Portek, it said the district court erred, because it did not consider that very same evidence that was appropriately excluded from the jury. It said that when it comes to punishment, you must consider all the circumstances, and in Reed v. Portek, there was no enhancement of damages. So let me continue. The circumstances of the case was that the district court refused to consider the particular circumstances, that as soon as MGA became aware of the patent when it was sued, and even before the case complaint was served, it became aware of the Segal analysis, it became aware of an invalidity defense that this court held was objectively reasonable as a matter of law. And therefore, MGA had reason to doubt the validity of the patent at the time of infringement, and that was the focus of HALO. What was the state of mind at the time of infringement? District court also erred by refusing to consider the state industries case of this court, which I maintain is virtually indistinguishable from this case. The district court never even cited the case, and that was the case we relied on very heavily, and that's despite HALO's saying that the district court's discretion is limited by 200 years of cases on enhanced damages such as the state industries case. The district court provided three erroneous reasons for ignoring all of those facts. It said that MGA was re-arguing the issue of vacated this court's willfulness finding, and that MGA was attempting to rely on Seagate's objective prom, and that's all in the appendix at page seven of the district court decision. MGA is not re-arguing willfulness. Despite the holding of willfulness, this court remanded to the district court for the district court to revisit the question of egregiousness under HALO in view of HALO's clarification of the policy reasons for enhanced damages, and that clarification emphasized determining under the particular circumstances of the case whether at the time of infringement the infringer had any reason to doubt the validity of the patent, which MGA clearly had. The district court also relied regarding vacator. Although the Supreme Court vacated the willfulness holding, it did not disturb this court's decision that MGA's invalidity defense was objectively reasonable as a matter of law, and MGA manifestly was not really. What do you mean by didn't disturb it? I mean, that was in fact the basis for the willfulness decision which the Supreme Court vacated. It overruled or rather reversed the willfulness finding because it relied on the objective prong of Seagate. It never even considered whether or not the ruling that the defense was objectively reasonable was correct or not. It just said that the objective prong, the preclusive effect of the objective prong is wrong, and we now have this new test. So it did not disturb the ruling that the invalidity defense was objectively reasonable as a matter of law, and manifestly we were not relying on the objective prong of the Seagate test because that focused on the time of trial. We're relying on the state of mind of the states. And then it did err on not recognizing the Segal analysis, and I've already explained that. There was no opportunity for MGA to decide whether to present the Segal analysis to the jury until after Hallow overruled the objective prong that MGA had relied on. So that's part of the particular circumstances of the case, and the unfairness of the district courts ignoring that. That would have been an issue that you would have presented to us in the first instance in the 2016, because this court must have decided that you're not going to get a do-over in the jury's willfulness finding because we affirmed that, right? So whether you're right or you're wrong about whether or not you should have gotten a do-over, that ship is sailed, and the court below was correctly not going to revisit the jury's failure to have relied on the Segal evidence. Now, the jury didn't say we didn't rely on the Segal test. It wasn't presented to the jury. Right, right, but I thought you were suggesting that you should have gotten a do-over now that you know what Hallow requires so that the jury would have that in front of them, that you would have reflected on whether to put that in or not put that in a different way given Hallow. I thought that's what, maybe I misunderstood your point. Well, it's not a do-over. Willfulness has been found. That is the law of the case, but the question of egregiousness is different. Egregiousness is, was the infringement behavior so egregious as to punish the infringer under the particular circumstances of the case? The particular circumstances of the case are we didn't present the Segal analysis to the jury because we were relying on the objective prong of the Seagate test, and the law changed after we made that decision. It was a strategic decision, but under the Peabody case in the Sixth Circuit, when you have that kind of a change in the law, you've got to consider that that change in the law occurred in being fair to the party that was prejudiced by not being able to make its strategic decisions on what the law later was. This is changing the rules of the game after the game has been played. You're well into your rebuttal, so why don't we hear from the other side, and we'll save the remainder of the time. Thank you, Your Honor. Thank you, and may it please the Court, David Cain for Intervention Toys. Let me respond to a few points that a proposing counsel just made. He said at the outset that the district court itself says that enhanced damages are warranted for egregious infringement, and the district court's order addressing enhancement, both before and after remand, addresses and concludes that MGA's infringement was egregious. Can I ask you a procedural question? Yes. Going way back to 2014, but before this, after the summary judgment ruling here, and I went back in trial. So there was a trial that included willfulness, and then there was some sort of proceeding that resulted in a quite lengthy opinion about enhancement and fees and so on. Post-trial, was there an opportunity for an evidentiary proceeding about the read factors, or had all the evidence had to be submitted already? So Your Honor, this goes back to the first time this case was up on appeal, which is what we called Intervention 1, just to try to keep them all straight. That was around 2011 when that decision was rendered. That was post-summary judgment. You're correct. We went back. We had a trial in 2012. Following the trial, there was a lengthy procedure where we submitted briefing. The district court asked for briefing on all issues such as whether there was willfulness under that existing Seagate standard. The parties also sort of made a post, even though it wasn't quite post-judgment yet, it was post-verdict, but like post-judgment motions. Yes, during that process, to answer your question, there was briefing. There was the opportunity to submit declarations. On our side, we certainly submitted extensive declarations outlining our attorney's fees and why we were entitled to our attorney's fees. District court judge referred it to a magistrate. I won't get too much into the weeds. We had a procedure with the magistrate where we had a hearing with experts. Then ultimately, I believe, June of 2013, there was the opinion that went up in 2014 and was argued as part of what I call Intervention 2, where willfulness was originally vacated or reversed and then up to the Supreme Court back down. Yes, during that process, there was an opportunity for evidence to be submitted and evidence was submitted on both sides. Not the Siegel letter. The Siegel letter was not. The Siegel letter, I do not believe, was submitted. I assume it wasn't. My question really was whether there would have been an opportunity. Yes, Your Honor. There would have been an opportunity as well as an opportunity, and I think this is an important point beyond the Siegel letter itself. There was an opportunity to submit a declaration from Mr. Siegel had MGA chosen to do so. That was an opportunity both before Intervention 2 and following remand from Intervention 2. There was no restriction from the district court on what could be submitted. There could have been a declaration from Mr. Carey, the attorney who they brought to court for trial way back in 2012, and then that precipitated the district judge saying, well, you would maintain privilege the whole time, but now you're going to waive privilege. I'm going to let you do that, MGA, but I'm going to require you to sit for deposition, present Mr. Carey for deposition during trial and produce any documents. You said repeatedly you have it, but if you have any, you got to produce them, which resulted in them producing 600 pages of documents during trial after representing that there were no documents. They do that. The evening, I think it was a Wednesday evening, we're going to take Mr. Carey's deposition. They said, no, you're not going to take his deposition. We're putting him on a plane. We're sending him home. They told the district court judge that the next morning. After having waived the privilege, saying they're going to produce the documents to us as ordered by the court, and the court at that point said, well, you're going to be sanctioned because you repeatedly represented that the documents, there are no documents and now you've produced them. They sent him home and they didn't put him on. They didn't present a declaration from Mr. Carey either in that period before the Intervention 2 appeal or after the remand from Intervention 2. The point that I wanted to make and a long-winded way of making that point is they've never presented any evidence about who authored the opinion or given us any opportunity to take discovery on the author of the opinion. They've never presented any evidence that anyone at MGA read that opinion letter or that anyone at MGA relied on that opinion letter and they've given us no discovery aside from the 600 pages of documents produced in the middle of trial about those subjects. Opposing counsel says that MGA was relying on this Siegel letter or this defense. There's no evidence of that in the record. None at all. We were denied the opportunity to take the face of the Siegel letter, which is that it's not competent. Of course, a review of the letter shows that it contains no discussion of claim construction. It contains very little substantive discussion at all. It concludes that all claims are not infringed, all claims are anticipated and all claims are obvious. Of course, the first conclusion that all claims are not infringed is belied by the fact that summary judgment was granted and affirmed. That was in intervention one. Summary judgment of infringement. Summary judgment of infringement. Thank you. The second opinion, which is that all claims are anticipated, summary judgment was granted of no anticipation. MGA didn't even appeal that ruling. The third summary judgment of obviousness, when you look at the chart corresponding to the claims that were tried, there's nothing other than a conclusory statement that the limitations of the claim for each of the claims that are asserted. I think that's clear from the face of the letter, but again, we were denied discovery to show even further that those opinions are not competent and not reliable. It's beside the point because there's no evidence of anybody having read or relied on those opinions. The district court correctly understood the task on remand. Correctly understood, and this court couldn't have been more explicit about it, that willfulness was decided. The district court understood because it's expressed in intervention two that it was to revisit its evaluation of egregiousness, but this court said in remanding, we're not saying that the decision of the district court has to change. That's law of the case. I believe I heard opposing counsel now acknowledge, although I don't think that's apparent from the papers, that that is law of the case. Willfulness has been decided. Much of their briefing suggests that the district court abused its discretion because it didn't reevaluate whether MGA acted in bad faith. MGA acted in bad faith. That's an affirmed finding based on the willfulness determination that was affirmed in intervention two. The question, let's put it this way, of just how bad the faith was, namely egregiousness, was an open question on remand. Absolutely, Your Honor, but I think that the point is and the problem with the appellant's position is rather than acknowledging and making just the point Your Honor made, willfulness is decided. They spend most of their time saying, we weren't willful. We didn't act in bad faith. They didn't make an argument, really, that notwithstanding that we acted in bad faith because our infringement was willful, notwithstanding the fact that we deliberately copied, that's another affirmed finding from intervention two. It was an objective indicia of non-obviousness. This court affirmed this court. The district court said there's overwhelming evidence, and there is, of copying. They sent the game over. What are they left with? We're all on the same page. There's a finding of willfulness, but now what's in play is whether the district court is going to give nothing in light of that finding or triple damages. What's the universe in which they can come in? Can't they come in on an objectively reasonable question, even if it had been rejected before? Could they come in now and try to put on witnesses that would have said at the time this was an objectively reasonable thing? We thought that was invalid. I suppose, and there is one case I'm aware of from this court that says objective reasonableness can be considered, but it certainly can't be the deciding factor. We know that from the Supreme Court's HALO decision. We know from HALO that it can't be the deciding factor in terms of the amount, whether or not it was rejected. We know that that can't be a bar, is what I meant to say, that that can't be a bar. We don't know, do we? If the district court judge in her discretion went all the way back in the weeds and looked at the claim construction positions and looked at the objective reasonableness of the validity. Claim construction, by the way, is something that wasn't before the jury and said, you know what? There was, at the time, not looking back, but at the time they had an objectively reasonable basis for doing what they did. Would she be within her rights under an abuse of discretion standard on the amount? Your Honor, I believe as a factual matter, she did go back and look at, she didn't use the words, I'm evaluating the objective reasonableness, but she evaluated- No, I'm asking as a matter of law, would that be appropriate? Not what she did. My threshold question is, could she do that? Yes, I believe she could. There's no prescribed set, it's a totality of the circumstances test. So I don't know that the judge would have to focus on objective reasonableness as long as the judge was more broadly looking at the entire case, looking at the claim construction issues as you pointed out, Your Honor, looking at the closeness of infringement, looking at the closeness of defenses. I don't know that the judge, so to try and answer your question as directly as I can, I don't know that she has to focus on whether a particular defense, whether anybody at MGA ever reviewed it or relied on it was quote unquote objectively reasonable. I think the court could do what the court did in this case and look at the fact that on every contested issue, differences in the art, level of skill. I mean, just on the ordinary artisan in board game design was three years working with lasers and optics for board game design. Now the jury rejected that, the district court rejected that, and I think that in valuing that factor and saying that there was a difference and that none of the references disclosed moving key pieces and looking at the objective and disho which the district court, the jury found were there, the district court agreed, this court agreed. The district court can do that and review the strength of the defense, and I suppose in some sense you would say, well, they're reviewing the objective reasonableness, but I don't know if that's the test. I think they look at the defense and say, how close on the spectrum was the defense? And it is within the district court's discretion as the court that sat and presided over trial and then reviewed the evidence to say, not close. And that's what the district court did. So I think that whether or not the court has to focus on quote-unquote objective reasonableness, as long as it's evaluating the closeness, which can be a factor, the district court has discharged its duty. Let me touch very briefly on a couple of other points that opposing counsels raised. One is the state industries versus A.O. Smith case. That case, of course, and this court has talked about it in non-precedential decisions, that case came up in the context of prior to the amendments from 1999 that provided for publication of patent applications. There's no question because Intervention Toys sent MGA its published patent application. There's also no question that they knew that there was a patent application that was out there based on obtaining a copy of the game, mark patent pending, and then copying it, that there was a patent. And a prudent person... That's why there's a firm judgment of... That's why there's a firm judgment of willfulness. No, no, no, 154D royalties, creationist patent. Yes, because the claims were substantially identical. They keep saying that the claims have changed, but that's another affirmed ruling. The claims were substantially identical and this court said in Intervention Two, the reason they're substantially identical is that the claims already required movement, not just of the regular playing pieces, but of the key play pieces. There's no question they had knowledge and certainly were on notice to follow this application and that's what a reasonably prudent person who's copied a game would do. Is the patent going to issue? And of course, looking back, the district court can say and did observe, they never stopped. They copied the game. They got a notice letter to which they never responded with the published patent application with substantially identical claims. They kept making the game. They were sued. They got the patent. They kept making the game. They kept selling the game. They didn't stop selling the game until the court enjoined them from selling the game. So all of these factors, the district court evaluated both after the trial in its opinion from 2013, which it incorporated and discussed and footnoted in its opinion post-remand after Intervention Two. That was a 63-page, very detailed opinion on all of these issues. And then in a subsequent order, I should say, that referenced that one, went through all of these issues again, found that all of the factors except for the last factor favored enhancement and so I would submit in my few seconds remaining that this is an egregious case. It's hard to imagine a more egregious case where all of these read factors, save for one, which is did they conceal their infringement, point in the direction of enhancement. The district court, therefore, did not abuse its discretion and did not abuse its discretion in awarding attorney's fees as it did. Thank you. Thank you, Your Honors. Judge Troncher, I think you asked me where we said in the briefs that less than treble damages. The blue brief at page 26 and the gray brief at page 3, I think, supports that. They say, oh, so when it was remanded, the plaintiff did not ask to take evidence regarding the Siegel analysis and test it. They knew we were relying on it. It's in the record at Appendix 51-1-2 through 51-84. We were relying heavily on it and they didn't say, well, if they're going to rely on it, we want to take some more evidence about it. They could have done that. We were already told we could not introduce new evidence, but they certainly could have acquiesced in it if they were so willing. And the question here is punishment of MGA, which is why you have to consider all of the circumstances. The question isn't whether intervention has a right to treble damages. They don't. They've been fully compensated. They got lost profits. They got an injunction. The question now is, was the behavior of MEGA sufficiently egregious to justify treble damages? And for that, all the circumstances, which is really due process for MGA, have to be considered. The change in law that made this strategic decision that MGA made under Seagate, the wrong decision in retrospect, but there is no way of knowing that. Oh, even without the Siegel analysis, there's still an abuse of discretion here, given the timing, which is indistinguishable from State Industries case. In State Industries, there was no attorney opinion, and the court still said it was an abuse of discretion for the district court to award treble damages and reverse that. So we don't even need the Siegel analysis, but it is part of the particular circumstances of the case. The closeness of the case, if at the time the law was that we had an objectively reasonable defense, that means a jury could have said that the patent is invalid and intervention gets nothing whatsoever. You couldn't be any closer. And furthermore, this court reversed. Can I just say, I'm sorry, do you have any case that talks about the difference or the difference between objective reasonableness and closeness or the identity of them or how those two terms relate to each other? The answer could be no. Not off the top of my head. I don't know if there is such a case, but common sense is that if you had an objectively reasonable defense, which certainly means that the jury could have bought that defense and invalidated the patent, the case is close. And on the issue of willful infringement itself, and I know we cited a case on this, the court reversed on willful infringement under existing law. So it was not only close, we had a winning position on willfulness under the existing law at that time. That only got turned around by the Supreme Court later on. But we made the right decision under existing law to rely on the objective prong of the Seagate test because, in fact, we won on that issue. Your time is run through. So if you have a final statement. I'm sorry? If you have a final statement to make, just one. Yes, Your Honor. I submit that if the court affirms on treble damages in this case, it will revive the practice pre-Seagate of raising willful infringement and the right to enhance damages in virtually every case. That was something that was erased by the Seagate test, but it's still a valid consideration. And it would be contrary to the Supreme Court's admonition that treble damages, enhanced damages should only be occurring in rare cases of truly egregious conduct. That's not this case. Thank you. We thank both sides. The case is submitted. That concludes our proceeding for this morning.